IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00653-MSK-KLM (Consolidated With Civil Action No. 05-cv-02343-MSK-KLM and Civil Action No. 05-cv-02555-MSK-KLM)

MICHAEL ANDRE CRUMPTON,

        Plaintiff,

v.

SA MARK FINNIN, Individually, and Officially as a Deputized Federal Officer,
CITY OF AURORA, COLORADO,
SA CLYDE A. LANGLEY, Officially and Individually,
SA JOSEPH C. JOHNSON, Officially and Individually,
SA FRANK A. LOTURCO, Officially and Individually,
A.U.S.A. STEPHANIE PODOLAK, Officially and Individually, and
DOES 1 THROUGH 20, Officially and Individually,

        Defendants.

## ORDER ON MOTION TO DISMISS

THIS MATTER comes before the Court on a motion to dismiss[1] **(#180)** filed by Defendant Finnin (in his individual and official capacities as a deputized federal officer), and Defendants Langley, LoTurco, Johnson, and Podolak (in their individual and official capacities).[2] The Plaintiff filed a response opposing the motion **(#187),** the Federal Defendants replied **(#193),** and the Plaintiff filed a sur-reply **(#205).** Having considered the same, the Court

---

[1] The motion has an incomplete case caption. In the future, all filings in this case shall bear a complete caption.

[2] When practicable, the Court will refer to each of these Defendants by name. Otherwise, they are referred to, collectively, as the "Federal Defendants."

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

For purposes of determining the instant motion, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Background

The Plaintiff, Michael Andre Crumpton, is a prisoner who appears through counsel. He filed a Fourth Amended Complaint **(#167)** asserting seven claims for relief against the Federal Defendants and others.

All of Mr. Crumpton's claims are premised upon the disposition of his personal property that was seized in conjunction with a criminal case in 1996.[3] Mr. Crumpton does not challenge the seizure of the property, but instead complains that even though no forfeiture proceeding was ever instituted with regard to the property, none of it was returned to him after his conviction and some, or perhaps all of it, has been destroyed.[4]

According to the Fourth Amended Complaint, Mr. Crumpton pled guilty to federal charges in June 2000.[5] Approximately five months later, he filed a motion in his criminal case under Fed. R. Crim. P. 41(e) seeking the return of all property that had been seized in 1996. The

---

[3] This property included sunglasses, a lock pick set, a green bag, black gloves, a ski mask, a bulletproof vest, a handgun, magazines, a holster, a black address book, a checkbook, notes, letters, folders, a laptop computer, an Anarchist Handbook, an Anarchist Cookbook, a Cellular Telephone Modification Book, a Spy Shop Catalog, bags, a Realistic scanner, an ICOM scanner, a Radio Shack frequency counter, an Acculab electronic scale, a lock pick, a tackle box, a triple-beam scale, a metal box containing diskettes, a Motorola cellular telephone, an AT&T cellular telephone, a Chex systems letter, a certificate of title, a pager, and other unknown items.

[4] To Mr. Crumpton's knowledge, much of the property has been sold or destroyed, but he has been unable to determine the disposition of all of the property.

[5] He was sentenced to 180 months in prison.

government, represented by Ms. Podolak (as the Assistant United States Attorney), opposed the motion, stating that Mr. Crumpton's co-defendant, Darian Hunter, had initiated an appeal, and that the property was essential to any new trial. For this reason, the district court denied the motion for the return of Mr. Crumpton's property.

Mr. Hunter's appeal[6] was concluded in November 2003, but Mr. Crumpton's property was not returned to him at that time. Instead, Mr. Crumpton learned that the property was no longer in the possession of the federal government. It had been transferred to the City of Aurora Police Department in 1998 and 2002. Mr. Crumpton believes that Ms. Podolak authorized both transfers. He also alleges that Mr. Langley and Mr. Finnin executed the first transfer of property in 1998. Mr. Crumpton also alleges that the federal authorities (Ms. Podolak, Mr. Langley, Mr. Finnin and others) maintained control over the property after its transfer to the Aurora Police Department.

Mr. Crumpton contends that he has been deprived of his property without due process of law. He contends that he was not given notice or opportunity to object to the transfers to the Aurora Police Department, or to any sale or destruction of his property thereafter.[7] He, in effect, contends that the Federal Defendants' failure to turn over his property to him after he was convicted, or after the conclusion of his co-defendant's appeal, resulted in either a continued deprivation or a *de facto* forfeiture of his property without due process.

---

[6] Mr. Crumpton alleges that Mr. Hunter proceeded with two separate appeals, the first of which concluded on May 24, 2001, and a second which concluded in November 2003.

[7] He also contends that the Federal Defendants knew he wanted his property and that they failed to ensure that the Aurora Police Department would preserve his property. He also complains that F.B.I. officers were not properly trained on procedures for transferring and disposing of property belonging to federal criminal defendants.

Although the Fourth Amended Complaint states claims as against both state and federal defendants, the instant motion concerns only Claims 3 and 6 which are brought against the Federal Defendants. Claim 3 alleges a violation of due process by Ms. Podolak, Mr. Langley, and Mr. Finnin. Claim 6 seeks to hold Mr. LoTurco and Mr. Johnson liable for the denial of Mr. Crumpton's due process rights because they failed to train F.B.I. agents as to proper procedures for handling property of federal criminal defendants.

Mr. Crumpton seeks three different types of relief: (1) the return of any property except for contraband; (2) compensatory damages against the Federal Defendants in their individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); and (3) prospective relief regarding the future handling of seized property.

### III. Analysis[8]

**A. Failure to State a Claim**

Under Fed. R. Civ. P. 12(b)(6), a court can dismiss a claim where no relief can be granted. There is a strong presumption against the dismissal of claims under this rule. *See Cottrell, Ltd. v. Biotrol Intern., Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). A court accepts all well-pleaded allegations in a complaint as true, and construes them in the light most favorable to the plaintiff. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Except in specific situations, a plaintiff is not required to include detailed factual allegations in a complaint. However, a complaint must contain "more than labels and conclusions", and must consist of more than "a formulaic recitation of the cause of action[.]" *See Bell Atlantic Corp. v. Twombly*,

---

[8] Some of the Federal Defendants' arguments for dismissal are moot due to concessions by Mr. Crumpton in his response, *e.g.,* that he does not seek to recover damages from the Federal Defendants in their official capacities, and that his claims are not premised upon negligence. Remaining are the Federal Defendants' arguments that the claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

4

_ U.S. _, 127 S. Ct. 1955, 1964-65 (2007).  It must contain factual allegations which are "enough to raise a right to relief above the speculative level[.]" *Id.*  Conclusory allegations of a constitutional violation are not sufficient.  *See Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir. 1996).

**Claim 3**

In Claim 3, Mr. Crumpton alleges that Ms. Podolak, Mr. Langley and Mr. Finnin deprived him of his property without due process in violation of the Fifth Amendment to the United States Constitution.  To state a claim for a deprivation of property without due process, a plaintiff must allege facts which, if true, establish that: (1) he was deprived of a property interest; (2) without constitutionally adequate process.  *See Clark v. City of Draper,* 168 F.3d 1185, 1189 (10th Cir. 1999).

There is no disagreement that Mr. Crumpton's allegations are sufficient for element 1. However, Ms. Podolak, Mr. Langley and Mr. Finnin contend that Mr. Crumpton cannot establish Element 2.  They argue that  (1) they did not possess the property when it was sold or destroyed, (2) the transfer of property from one law enforcement agency to another does not trigger any right to notice or a hearing, and (3) that Mr. Crumpton has an adequate post-deprivation remedy to recover the property in Fed. R. Crim. P. 41(e)[9] and its state counterpart, Colo. R. Crim. P.

---

[9] The rule is now found at Fed. R. Crim. P. 41(g), which states:
> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

41(e).[10]

The first two contentions fold into a single argument – that the Federal Defendants were free to transfer the property to the Aurora Police Department and that they were not responsible for its disposition after they did so. To this, Mr. Crumpton responds that he has alleged that the Federal Defendants retained control over the property even though it was in the possession of the Aurora Police Department. If that were the issue, the pleadings are adequate to create a factual issue to be determined. However, the Court believes that both parties have missed the salient issue.

The essence of Mr. Crumpton's violation of due process claim is that he was entitled to the return of his property after his conviction (or at the latest, after his co-defendant's appeal was concluded), and that further retention required due process. This is consistent with both Supreme Court and Tenth Circuit caselaw.

The Supreme Court has long recognized that due process is required before property can be forfeited to the government. *See United States v. $8,850 in United States Currency*, 461 U.S. 555, 562-65 (1983); *see also United States v. James Daniel Good Real Property*, 510 U.S. 43, 48-49 (1993) (citing cases). Due process requires that the person whose property is at stake must

---

[10] Colo. R. Crim. P. 41(e) states in pertinent part:
> A person aggrieved by an unlawful search and seizure may move the district court for the county where the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that:
> (1) The property was illegally seized without warrant; or
> (2) The warrant is insufficient on its face; or
> (3) The property seized is not that described in the warrant; or
> (4) There was not probable cause for believing the existence of the grounds on which the warrant was issued; or
> (5) The warrant was illegally executed. . . .

6

receive notice "reasonably calculated under all of the circumstances" to apprise him or her of the pendency of the forfeiture, and an opportunity to object. *See Dusenbery v. United States*, 534 U.S. 161, 167-70 (2002).

The Tenth Circuit has specifically addressed the right to due process with regard to property of a defendant. In *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1983), a defendant's property was seized in conjunction with his arrest, was not offered as evidence in his criminal case, and was not returned to him after he was convicted. Much of the property was sold without notice to him. The defendant claimed that he was deprived of his property without due process. On an appeal from the dismissal of the defendant's claims on the pleadings, the Tenth Circuit agreed that the defendant stated a claim for violation of due process, because the property had been retained after his conviction without a hearing, and the defendant was entitled to an opportunity to show that the property should not be retained. The reasoning of Coleman is consistent with *Lowther v. United States*, 480 F.2d 1031 (10th Cir. 1973), in which the court found that due process required a hearing for disposition of property of a defendant that was acquitted.[11]

The obligation to provide due process prior to retention or disposition of a defendant's property does not hinge upon whether the Federal Defendants had possession or control over it. Thus, the first two arguments raised by the Federal Defendants do not compel dismissal of this claim.

---

[11] At least two circuit courts of appeal agree that when a convicted defendant's property is retained after conclusion of a criminal case, officials must initiate a forfeiture proceeding without unreasonable delay. *See Lee v. City of Chicago,* 330 F.3d 456, 466 (7th Cir. 2003); *United States v. Premises Known as 608 Taylor Ave., Apartment 302, Pittsburgh, Pennsylvania,* 584 F.2d 1297, 1302 (3d Cir. 1978).

The Federal Defendants' third argument arises out of the general rule that there is no due process violation if there is an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Federal Defendants contend that Fed. R. Crim. P. 41(e), or Colo. R. Crim. P. 41(e), provide an adequate remedy to Mr. Crumpton.

Mr. Crumpton responds that neither Fed. R. Crim. P. 41(e) nor Colo. R. Crim. P. 41(e), provide a remedy for deprivation of his right to due process or for recovery of his property. As to Fed. R. Crim. P. 41(e), he states that: (1) he filed a motion under this rule, the Government opposed it, and it was denied; (2) the rule does not govern permanent deprivation of property; (3) the rule provides no remedy for property which has been sold or destroyed; and (4) that he relied, to his detriment, upon representations by Ms. Podolak that his property could be returned to him after his co-defendant's appeal had concluded.

The Court agrees with the first three observations – Fed. R. Crim. P. 41(e) provides no remedy for abridgement of Mr. Crumpton's right to due process nor for the loss of his property. The fourth argument is not apt.

As for Colo. R. Crim. P. 41(e), Mr. Crumpton asserts that it does not apply at all because it is limited to circumstances where there was an unlawful search and seizure. He is correct. Therefore Colo. R. Crim. P. 41(e) provides no remedy.

The allegations in Claim 3 are sufficient to state a claim for denial of due process. Mr. Crumpton alleges that no forfeiture proceeding was ever initiated with regard to his property. He also alleges that he was never given notice or opportunity to object to retention, transfer or disposition of his personal property.

**Claim 6**

In Claim 6, Mr. Crumpton alleges that Mr. LoTurco and Mr. Johnson failed to train F.B.I. agents on constitutionally required procedures for the transfer and disposition of property belonging to federal criminal defendants. He alleges that as a result, Mr. Langley, as well as Agents Michael Wonn and Ricky Wright, allowed Mr. Crumpton's property to be transferred to the Aurora Police Department without ensuring that his right to the property was protected.[12]

A "failure to train" claim is asserted against a supervisor for the acts of an employee that result in a constitutional violation. *See Simpson v. University of Colorado Boulder,* 500 F.3d 1170, 1178-79 (10th Cir. 2007); *Meade v. Grubbs,* 841 F.2d 1512, 1527-28 (10th Cir. 1988). To state such a claim, a plaintiff must allege that: (1) an employee violated his constitutional rights; (2) the violation was the result of inadequate training; and (3) the need for training was so obvious, and the inadequacy of training was so likely to result in a violation of constitutional rights, that the failure to train is considered to be deliberate indifference to the constitutional right, itself. *Simpson*, 500 F.3d at 1178-79.

Mr. LoTurco and Mr. Johnson argue that Mr. Crumpton has failed to plead adequate facts to establish all elements. Mr. Crumpton disagrees.

Mr. Crumpton has alleged sufficient facts as to element 1.[13] However, the Fourth Amended Complaint does not contain sufficient factual allegations to establish elements 2 or 3.

---

[12] The Court understands this argument to be that the failure to train resulted in a transfer, and ultimately, destruction of his property without due process.

[13] As discussed *supra*, Mr. Crumpton has pled a due process violation by Defendant Langley. However, he has not as to Agents Wonn or Wright, and he concedes in his response that he cannot do so because it is unclear to him whether they had anything to do with the retention or destruction of his property.

There are no allegations as to what specific training should have been provided to F.B.I. agents, or whether there was a particular deficiency in the training that was provided. Further, there are no allegations that Mr. LoTurco and Mr. Johnson knew that the training they provided was inadequate or that additional training was needed. Finally, there are no allegations that the need for specified training was obvious, and that the failure to provide such training would likely result in a deprivation of due process or a defendant's property. Thus, Claim 6 is dismissed.

**B. Qualified Immunity**

To the extent that Mr. Crumpton seeks to recover damages from Ms. Podolak, Mr. Langley and Mr. Finnin on Claim 3, they claim entitlement to qualified immunity. A federal employee is entitled to qualified immunity if his or her conduct did not violate a clearly established statutory or constitutional right of which a reasonable person in his or her position would have known. *See Brosseau v. Haugen,* 543 U.S. 194, 198 (2004); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *See Roska*, 328 F.3d at 1251 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determination of whether a government employee is entitled to qualified immunity in the context of a motion under Fed. R. Civ. P. 12(b)(6) involves a 2-pronged inquiry. A court first determines whether a constitutional violation was pled. This inquiry requires a court to evaluate all allegations in the light most favorable to the plaintiff. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

There is no dispute that Mr. Crumpton was entitled to due process under the Fifth Amendment before he was deprived of his property. The question is whether such constitutional

right was clearly established under the circumstances of this case. *See id.; Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). This latter inquiry is made in light of the specific context of this case. *See Brosseau*, 543 U.S. at 198 (quoting *Saucier*). Whether the law was clearly established is essentially a legal question and is measured by an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998). There must be caselaw in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County,* 494 F.3d 891, 903 (10th Cir. 2007), *cert. granted*, 128 S. Ct. 1702 (2008). There need not be a factually identical case, but there must be a Supreme Court or Tenth Circuit opinion on point, or sufficiently analogous authority from other courts. *See Martinez v. Carr,* 479 F.3d 1292, 1295 (10th Cir. 2007); *see also Mecham v. Frazier,* 500 F.3d 1200, 1205-06 (10th Cir. 2007).

The Federal Defendants argue the law was not clearly established requiring that they give Mr. Crumpton notice or an opportunity to be heard before his property was transferred to the Aurora Police Department. This inappropriately focuses upon the "transfer" as a triggering event. As noted earlier, Mr. Crumpton's right to either have his property back or to have notice and an opportunity to address its retention or disposition arose upon his conviction (or arguably at the latest upon the resolution of the appeal of his co-defendant).

When Mr. Crumpton was convicted in June 2000, it was clearly established by the Tenth Circuit's decision in *Coleman*, that the post-conviction retention or forfeiture of seized property required a hearing. It was also clearly established that there could be no permanent deprivation of his property without a forfeiture proceeding that provided notice to Mr. Crumpton and the opportunity to object. *See $8,850 in United States Currency*, 461 U.S. at 562-65; *James Daniel Good Real Property*, 510 U.S. at 48-49. Based on the Fourth Amended Complaint, it was the

11

Federal Defendants who failed to provide Mr. Crumpton with due process following his conviction. As a consequence, they are not entitled to qualified immunity.

## C. Injunctive Relief

The Federal Defendants make two arguments that Mr. Crumpton is barred from obtaining injunctive relief on his claims. First, they argue that summary judgment[14] should be entered on official capacity claims seeking injunctive relief, because Mr. Crumpton only asserted claims under *Bivens*, and *Bivens* only authorizes individual capacity claims for monetary relief. Second, they contend that Mr. Crumpton lacks standing to obtain injunctive relief because they have not possessed his property since 1998.

The Court declines to address these arguments because they are directed to a remedy, rather than a claim.

## D. *Bivens* Claims Barred Due to Other Remedies

Finally, the Federal Defendants contend that all *Bivens* claims are barred under an "affirmative defense" because Mr. Crumpton had four other remedies available to him: (1) he could have filed a suit alleging a takings claim in the Court of Federal Claims; (2) he could have sued for negligence under the Federal Tort Claims Act; (3) he could have sought relief under Fed. R. Crim. P. 41(e); and (4) he could have sought a settlement of his claim under 31 U.S.C. § 3723(a)(1). Mr. Crumpton responds that none of these options were available to him, and none overcome his federal claim.

These arguments appear to request summary judgment as to various affirmative defenses.

---

[14] The motion was not filed pursuant to Fed. R. Civ. P. 56, and the Plaintiff did not treat it as such. Indeed, apart from the single reference to "summary judgment" in the motion's section header, all references are to the sufficiency of the allegations. Thus, Court does not construe any part of the motion as seeking summary judgment.

The Court declines to convert this motion to one brought under Fed. R. Civ. P. 56 as provided for in Fed. R. Civ. P. 12(d).

**IT IS THEREFORE ORDERED** that the Federal Defendants' motion to dismiss **(#180)** is **GRANTED** in part and **DENIED** in part. Claim 6 is dismissed, in its entirety. Otherwise the motion is **DENIED.** The caption shall be amended to delete all reference to Mr. LoTurco and Mr. Johnson.

Dated this 30th day of September, 2008

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge